Good morning, your honors, and may it please the court. My name is George Arend, and I represent Aaron Doyle in this lawsuit. Mr. Doyle is a Quincy, City of Quincy police officer, a former City of Quincy police officer, and he's here today to get his day in court on a claim under the Computer Fraud and Abuse Act against the lawyer for an adverse party in a domestic state court, domestic proceedings that were resolved in Mr. Doyle's favor. The attorney used computer information belonging to and computer USB drive belonging to Mr. Doyle. I don't really want to belabor the facts given the brevity of the time, so I want to really dive into what the trial court did and why I think it is wrong. Well, I guess, you know, and I'm struggling with this from the standpoint that, and I'll probably ask both sides to talk about this, you know, I think we have to set aside, but the underlying problem is these people obviously have some domestic issues that go on, but we can't look at a case specific to that. So, and for purposes, we have to assume that it was stolen, you know, for purposes of summary judgment, right? So, the trial judge seems to limit loss to saying you have to, you know, if even though the attorneys seem to say, you know, we have to accept your state of this, it didn't go any further than that. And that just doesn't seem, you know, I'm struggling with that. I mean, that's to your benefit from this, that the trial court just doesn't seem to say that, you know, it's sort of like the fox and the hen house. We asked the fox how many chickens he ate. You know, that your client can't, you know, in order for your client to be restored, I guess basically what he's saying is I need to look and see, you know, I don't have to rely on Mr. Chase to say it didn't go any further. I need to know if it went any further, right? Right. And we also have admissions that on at least four occasions, Mr. Chase had this USB drive plugged into his computer so that he could view and copy the documents. I mean, it's not like we're speculating here that he's got the documents, but you're right, we don't have to take his word as to how much they were copied and how much they were disseminated. The question of finding out, of documenting the extent of the impairment of the integrity of this data is something that's clearly contemplated by the definitions of damage and loss. And I should back up. I don't follow that. People get into fights all the time and disputes, and these days they play around with computers and they may try to get data. But why should this be a federal case? Your client, what has your client lost as a result of what happened? He has, well, he's lost the use of his USB drive and he's lost the integrity of the data that's on that USB drive, and it's in the possession. These are documents sealed by California and Washington state courts that have not been returned to him and have been disseminated to his great detriment. That's, I don't want to go outside beyond the record on that. That's a problem that went on in the state court. Except to the extent that Mr. Chase accomplished this result by means of accessing a protected computer that had documents from California state courts that were sealed by California state court order in Washington and filed them in Washington state court procedures. That's a protected computer. We get to the question of whether a USB drive is a computer as part of this. Let me start there because that's where the whole thing stopped me. And it does dovetail into the question of damages. You know, they talk about what is a computer. It's definitely not a computer, the USB drive. The question is whether, at least the way the definition is phrased, it could be some kind of storage facility that's used in conjunction with something that's a computer. But if you extend it and make the statute broad enough to cover that, then it seems to me it almost hurts you on your damages because the damages are aimed really at, you know, restoring data and the integrity of data. And I don't mean integrity meaning you see it, I see it. I mean talking about the computer integrity. So it's like there's this double-edged sword here where if it is a computer under the broadest definition, it seems to me that that targets what the statute was really aimed at, at the damages, which hurts you. If I just look at the damages all by itself, it's pretty broad, cost of responding to an offense. So would you start with why it is a computer and then maybe you can talk about how that fits into the damage definition. Sure. I view it exactly the opposite way, that the broad definition of a computer helps us understand what must be a recoverable item of loss or damage under the statute. And it is clear, the text of the definition, I mean we're not in the realm of dictionary common sense definitions of computer, we're in the realm of a statutory definition of a computer that Congress intended to protect. And that is, the term computer means any storage facility, well actually it includes, it's a non-exclusive list when we get to this part of the definition, that includes any a broadening term, data storage facility, certainly that includes the USB thumb drive that's at issue in this case, that is either directly related to, I presume that's something like an internal hard drive on a computer, or operating in conjunction with a USB drive that you plug into a computer. And in this case, this USB drive was used in conjunction with Aaron Doyle's computers. He took documents sealed by California and Washington state courts from his computer and put them on the thumb drive. It was used in conjunction with, after the offense, it was used in conjunction with Brian Chase's computers when he plugged the USB drive into his computer. And I don't see how we avoid the question, or avoid the conclusion that this is a computer within the meaning of that definition. If this is a computer, we have to be able to remedy the loss or damage caused by unauthorized access of this computer. And when you get to the definitions of loss and damage, they don't just limit themselves to computer. Both loss and damage, some of the causes of action require proof of both under A-5, some don't under A-2 and A-7. But regardless, the definitions are somewhat self-referential because loss is defined in terms of responding to damage and so on. And so I don't want to make much of the distinction between the two, except to- Let's start by defining, what's the damage to? Here, it is the impairment of integrity to data. And the Sureguard case, district court case, and some other districts outside of the Ninth Circuit have disagreed with it, says impairment is impairment of integrity of data includes loss of confidentiality. One thing that I would add to the reasoning of the Sureguard court is this finds resonance in the text of the Computer Fraud and Abuse Act itself. Subsection A-7 gives you a cause of action for threats to impair the confidentiality of data on a protected computer. I think that helps us understand what integrity of data is. See, this, essentially, people for time immemorial have been stealing other people's files for use in litigation. I mean, it's not a good thing to do, but it has happened. And I'm having a little trouble seeing how what you say happened is any more than somebody stealing your files and you're having to spend money in order to figure out what they stole. And to delete it. Yeah. Why does this become a quintessentially federal claim involving a computer? If we approach this case from the perspective that we need to narrowly apply this statute so that we don't have very many cases that are brought under it, then you can probably come to that conclusion. But I think we're obligated to apply this statute exactly as it is written. We satisfy the definition of a computer. It's a storage device in conjunction with a computer. We satisfy the definitions of loss and damage, which are not confined to damage to the protected computer itself, but to the integrity of the data that is contained on that computer. We've got cases that say impairment of integrity means loss of confidentiality, and we see that echoed in the text of the statute, where threats to impair the confidentiality of that data is a cause of action. What you're saying is you can steal people's files and you might have a state cause of action, but if you do it in a way that impairs data on a computer, then it falls under this federal claim. Yeah. I think we're just obligated to apply the statute the way that it's written. Well, you aren't trying to fix data on your computer, though. Your computer is fine. If you think of fixing in terms of making a corrupt file uncorrupt, yes. But if you think of fixing in terms of restoring the integrity or restoring the data to its pre-offense condition, and that's the text of the statute, the pre-offense condition of this data was confidential. And that's what we want to restore. We want to get this permanently deleted from the computers that it was copied onto by Mr. Chase. And that's kind of where the rubber hits the road is that your USB drive is intact, so to speak. So it is dated to the pre-offense condition, so the USB drive is intact. And the question is, if we take your broad definition, the only way the USB drive becomes a computer is because it's a storage facility that in effect hooks up to a computer and can be activated via a microprocessor. So I'm interested in your point that you think that the loss sections cover both loss to the computer itself and then loss that could be outside of the computer. Would you make that distinction? Yes. My time has expired. May I go ahead and answer that question? I'm just going to refer to the language of the statute. Yes, Your Honor. So the question I have, I don't want to belabor it, but I think it's important. I mean, you've raised something that's totally novel, okay, and we've had these district courts that have gone different ways. We would have to determine that the condition of the data means more than the integrity of the data. It would also mean its status in terms of protected confidentiality, correct? Yes, and the reason for that is because the statute gives you a cause of action for threats to impair the confidentiality of data, and that's what integrity must mean. Okay. Thank you, Your Honors. I have not reserved any time for rebuttal. I realize that. Thank you. If we have any questions, we'll ask them, though, rest assured. Thank you. Police, the Court. My name is William Cameron. I represent Brian Chase. Brian Chase represented Haley Taylor and her parents, the Grays. She brought in a copy of a letter that was addressed from Van Maddox, the auditor of Sierra County, to Mr. Doyle, and it proposed his termination as the Sierra County sheriff. They were in the midst of some anti-harassment orders, and Mr. Doyle was getting ready to file a defamation action against the Grays because they had complained about his conduct. Well, there's a lot of facts that they don't agree on, but for summary judgment, we have to give them all inferences, and that's that she stole it, okay? Well, maybe Haley Taylor did, but certainly Brian Chase didn't, and Brian Chase couldn't possibly have known that because when he heard the story that these documents had been stolen, and on February 4th, the next day after the discussion with Shiffner, Doyle's attorney at the time, he asked Haley, where did you get these papers? Because Doyle's filed a complaint that she burgled his house and took them. And she said, no. And so she brought down a thumb drive, which had these documents on it. Now, we never got there, but Brian Chase, I don't think, had ever seen a thumb drive before. But it had all sorts of stuff, and so now he's defending a defamation action. Why not? What do you mean, why not? I mean, you know, he's an attorney, so this mystical thumb drive shows up in his office. He plugs it into his computer, his assistant does, right? Yes, he does. He does. I thought he'd never seen a thumb drive before. Right. How did he know how to plug it in? His client knew how to plug it in. Yeah, well, one of the real issues here is that he has a thumb drive that doesn't belong to his client, right? No. His client told him that she got it in an envelope from California, somebody helping her out. That's easy enough to believe, because Doyle leaves a big wake behind him of people who are unhappy. Right. And that's the story that she has. So Chase knows full well that the story about her burglarizing his house and taking a couple of pieces of paper out of a folder is just a bunch of baloney. But I still think you have to take their theory of the case on summary judgment, and from that theory of the case they're entitled to any inferences from that. And even the circumstances that you're saying, I think there can be an inference that she stole it and he knew it was stolen. So I think we have to analyze the case from that standpoint. And then you go to the legal issues of whether it's a computer and whether it satisfies laws under the language. But I don't see how for summary judgment purposes, you know, we can't resolve those issues. That might be the reason that you would win a trial. You know, it could be any number of things. But this is summary judgment. Well, I think that's perhaps a good question, though. Well, no, it's more than a good question. Okay. I mean, I can't, I have to, at summary judgment, the party that loses is entitled to all inferences from the platings. And the inferences from the platings are that Taylor stole it and that Mr. Chase knew it was, you know, took it under suspicious circumstances, which should have led him to believe that she wasn't in proper custody. There was a burglary report, any of all of those. So that's, Taylor takes it under those circumstances. So, I mean, your real argument is the plain language of the statute, does it allow for this cause of action? Okay. Well, the first thing is that it's not a computer. I mean, it's a thumb drive. It's flash memory. It's the same thing as you have on an SD card in your camera. You take the SD card out of the camera, you put it in the computer, you take the pictures off of it. That was my first thought. However, the way it's defined is a computer can mean a microprocessor and it also includes a data storage facility that is used in conjunction with a computer. Well, that's what's used in conjunction with the processor. Right. So why isn't the USB drive a data storage facility that is used in conjunction with a computer? Why is it not? Yeah. Okay. Why did Congress pass a statute? They passed a statute to stop hackers, people who maliciously got into other people's computers, damaged stuff, stole things out of them. But all the legislative intent, we get to that if the plain language doesn't help us. So I think what Judge McKeown is asking you to do is address the plain language. What is a data storage facility? A data storage facility is a data storage facility that's used in conjunction with a computer. Okay. You have to read all those things together. They're not in the disjunctive, they're written in the conjunctive. Right. And if you just have a data storage facility sitting here, floppy disk, a Blu-ray disk, a flash drive, an SD card, it's not a computer. But is it a data storage facility? Let me ask you first. Is a USB drive a data storage facility just in and of itself with no other words? Is it a data storage facility? Just like an IBM card, you bet. It is. Okay. So then the only words you dispute is whether it comes into the statute because it's used in conjunction with. Right. But that's how they used it here is that they used it in conjunction with a data processor or a microprocessor. So why isn't it under the definition of this statute a computer? It's not a computer under the definition of this statute because it's just storage. It's not something you have to read all of those. It has to be a high-speed processor. It stores data. No, that's not what it says in the statute. See, that's what I first thought it said. But if you read the words of the statute, a computer can include, the definition of a computer can include a data storage facility used in conjunction. Well, it can be used in conjunction with a computer. So can the SD card in your camera. Right. And it's just simply not. And that may well be a data storage facility then. But whatever was done to it, whether Haley Taylor busted into this guy's house and took it or whether she got it in an envelope from California, she didn't do anything to the integrity of this data. She just looked at it. And that's all Brian Chase did. He made copies of it. Well, I guess, though, how do we really know that? My question is in terms of, you know, if these were two businesses as opposed to two people that are feuding over some domestic dispute, you know, and we have to assume, you know, we can't go to the status of what the people's underlying. You know, whenever in litigation would you have to rely on the other person to say, oh, this is the only way I used it and you don't get to check any further than that? I'm not following. Well, I mean, essentially Brian Chase wants to say, this is all I did, and so you can't possibly have any more damages than that. What they're saying is that the language for loss is broad and it allows restoring data to its original condition. Why wouldn't, you know, why doesn't that include restoring the data to its original level of privacy and confidentiality? You mean going out and collecting it someplace? Well, no, looking at the computers in Brian Chase's office to find out where all this is. Because, essentially, if the appellant is correct that restoring, that loss can include restoring to its original level of privacy or confidentiality. If it can, why do they have to rely on Brian Chase's word to say, here you go, it's back, don't worry about it? Well, let's put it this way. They didn't ask for or make any effort to do a forensic analysis of Brian Chase's computers. Let's start with that. Now, this summary judgment was heard like two or three weeks before trial was scheduled. So that wasn't going to happen. So that evidence was never going to be produced. So there was no loss at all? Is that your point? Pardon? So he hasn't lost anything at all? The thumb drives in the Moses Lake Police Department where it's been ever since. So this is a case of where, gee, I think something may be gone. I'm going to sue you. You've got to pay me a bunch of money so that I can go out and try and collect it all back. And it doesn't work that way. If you've lost something, what did you lose? Where is it gone? It hasn't gone anyplace. Well, I guess the question, you know, summary judgment sometimes, you know, without, you know, sometimes judges comment on the merits of cases in the sense that they say, hey, this is a dog. This dog don't hunt. And, you know, let's put it down, and then it goes away. And, you know, maybe it would be a loser at trial. But we still have to look at the language of the statute. And that's, you know, is the language written in a way that's broad enough to include giving them all inferences? And that's where summary judgment gets sticky on appeal because, you know, the dog may not hunt, but it may get to go out and try. Well, I certainly hope that's not the answer in this particular case because the evidence doesn't support the contention that Haley Taylor stole anything. The evidence doesn't support the contention that the integrity of his debt has been in any way impaired. And the notion that a thumb drive is a computer and that Brian Chase knowingly somehow or another committed a felony by looking at the thumb drive. But, you know, that's all repeating what we've already heard. Let me just go a different route. So if you can get through the statute and get through the computer and get through the loss, then the district court says even if he accepted all of that, the loss remains speculative at this stage and discovery is closed. So we actually couldn't establish a loss within the parameters of what you would need to do for damages. Would you comment on that? Okay. The evidence that was presented to the trial court, while it had speculation about what it would take to do some analysis of Brian Chase's computers, was just speculation. The judge isn't going to allow that as testimony. It has to be what it cost, not what it might cost in the future or what it could cost. There's simply no evidence that he lost anything, that he suffered any damage other than he doesn't want this stuff out. Is there any reason why that can't be taken care of in the state court proceedings? Well, you're right. It should have been. One would think. Because we have a defamation suit going. All of a sudden we're now in federal court and I realize that the record that you got was a mess and so was everything else. It kind of describes the case, doesn't it? It kind of describes the whole situation between these individuals or among these individuals. It's kind of a mess, right? Well, it is a mess. And it's distressing that an attorney gets hauled into this sort of thing by championing his client's cause. I've overstayed my time. Yes, you have. Are there any further questions? Are there any questions of the Palace Counsel? Thank you. Thank you. The case just argued is submitted for decision.
judges: Schroeder, McKeown, Callahan